# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAX AIRFREIGHT, INC.,**

    Plaintiff,

    v.                                            Case No. 18-CV-11

**LIDAR SERVICES INTERNATIONAL, INC.,**
et al.,

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Tax Airfreight, Inc. filed a complaint for declaratory judgment against Lidar Services International Inc., LSI Leasing Inc., Lidar Services, LLC (collectively "Lidar"), SDV Logistics Canada Inc., SDV (USA) Inc., and General Electric Company ("GE"). GE has filed a motion to dismiss the complaint for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Lidar also moves to dismiss, adopting and incorporating the arguments and authorities cited by GE. SDV Logistics Canada also joins GE's motion to dismiss. For the reasons that follow, the defendants' motions to dismiss are granted.

## BACKGROUND

Lidar contracted with SDV Logistics Canada for the shipment of helicopter parts from Alberta, Canada to Jefferson, Wisconsin. (Compl. ¶ 4, Docket # 1.) The equipment was shipped in two crates and one pallet and the shipment was split into two legs: Alberta to O'Hare Airport, Chicago and O'Hare to Jefferson, Wisconsin. (*Id.*) Tax Airfreight entered into a delivery contract with SDV (USA) whereby Tax Airfreight agreed to transport the equipment for the second leg of its trip from O'Hare to Jefferson, Wisconsin. (*Id.* ¶ 5.) The

equipment arrived in Chicago on October 21, 2014. (*Id.*) One of the crates was subsequently mis-shipped to a GE recycling facility during delivery to Jefferson and ultimately destroyed. (*Id.* ¶ 6.) Lidar is a Canadian company based in Calgary, Alberta. (*Id.* ¶ 7.)

SDV (USA) issued a Delivery Order to Tax Airfreight for the shipment of the equipment by Tax Airfreight to its final destination. (*Id.* ¶ 25., Exh. F.) The Delivery Order expressly incorporates SDV (USA)'s Terms and Conditions into the order. (*Id.* ¶ 26.) SDV (USA)'s Terms and Conditions explicitly state that "[t]hese terms and conditions of service constitute a legally binding contract between the 'Company' and the 'Customer.'" Customer is defined as the shipper, Lidar, while Tax Airfreight is defined as a "third party." (*Id.* ¶ 27, Exh. G.) SDV (USA)'s Delivery Order with Tax Airfreight, which operates as the Bill of Lading, was also subject to Tax Airfreight's Terms and Conditions, per the Rate Agreement between SDV (USA) and Tax Airfreight. (*Id.* ¶ 28.) Tax Airfreight's Terms and Conditions state that "[t]he shipper and Tax Airfreight, Inc., . . . agree as follows." Shipper is defined as "any and all entities tendering a shipment to Tax Airfreight, Inc., for carriage . . . ." (*Id.* ¶ 29, Exh. H.)

Under these terms, SDV (USA) is the shipper, and Tax Airfreight's Terms and Conditions apply for Tax Airfreight's portion of the delivery. (*Id.* ¶ 30.) Tax Airfreight's Terms and Conditions state:

> CARGO LOSS AND DAMAGE: . . . Tax Airfreight, Inc.'s liability for loss, damage, or injury shall be limited to fifty cents ($0.50) per pound or fifty dollars ($50.00) per shipment, whichever is greater, up to one hundred thousand ($100,000.00) per occurrence, unless a higher value is declared at time of tender to Tax Airfreight, Inc., and the applicable charge of seventy cents ($0.70) per one hundred dollars ($100.00) of value in excess valuation is paid. However, in no event, even declaration of excess value, shall Tax Airfreight, Inc.'s liability exceed two hundred and fifty thousand dollars ($250,000.00) per occurrence. In cases of loss, damage, or injury of part of consignment the weight to be taken into account in determining Tax

> Airfreight, Inc.'s liability shall be only the weight of the item or items lost, damaged, or injured. In no case shall Tax Airfreight, Inc., be liable for any type of consequential, special, indirect or incidental damages (including without limitations, lost profits or business opportunity) or punitive or exemplary damages incurred or suffered by the shipper as a result of overage, shortage or damage to shipments transferred.

(*Id.* ¶ 31, Exh. H.) The Delivery Order prepared by SDV (USA) and presented to Tax Airfreight did not have a higher value declared at the time the order was presented to Tax Airfreight. (*Id.* ¶ 32.) SDV (USA) declined to declare a higher value and incur an increased shipping rate. (*Id.* ¶ 33.) Upon discovering that one of the crates was missing, Tax Airfreight tendered payment of $373.00 as reflective of its agreement to pay $0.50 per pound of the missing item shipped. (*Id.* ¶ 34, Exh. I.)

On May 22, 2015 Lidar filed a lawsuit against SDV Logistics Canada and SDV (USA) Inc. in the Court of Queen's Bench of Alberta, Canada, Court File No. 1501-05723. (*Id.* ¶ 18, Exh. A, Docket # 1.) SDV Logistics Canada and SDV (USA) filed the equivalent of a third-party complaint against Tax Airfreight and GE on November 16, 2015 and January 4, 2016, respectively. (*Id.* ¶ 7.) Lidar then filed an Amended Statement of Claim to add Tax Airfreight and GE as defendants on January 21, 2016. (*Id.*) On February 12, 2016, Tax Airfreight filed a third-party complaint naming GE and SDV Canada as defendants. (*Id.*)

The defendants, including SDV (USA) have made demands upon Tax Airfreight for indemnity and/or judgment and payment of damages in excess of $373.00 in the Canadian lawsuit. (*Id.* ¶ 35.) Tax Airfreight contends that it owes nothing further to SDV or any other defendant as it offered the defendants the maximum agreed upon liability of $373.00 for the alleged damaged goods. The weight of the damaged goods was 746 pounds multiplied by $0.50 per pound totaling a maximum carrier liability of $373.00. (*Id.* ¶¶ 36-37.) Tax

Airfreight filed the current lawsuit seeking a declaration concerning the application of the limitation of liability clause found in Tax Airfreight's Terms and Conditions, as interpreted pursuant to United States federal law. (*Id.* ¶ 38.)

**ANALYSIS**

Tax Airfreight seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (*Id.* ¶ 1.) The defendants move to dismiss, asking the Court to abstain from exercising its jurisdiction under the Declaratory Judgment Act because of the pending Canadian litigation. (GE's Br. at 5, Docket # 23.) A motion to dismiss based on an abstention doctrine raises the question of whether a court should exercise subject matter jurisdiction. *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E.D. Wis. 2005). In reviewing a Rule 12(b)(1) motion, I look both to the allegations in the complaint and to other materials relating to the exercise of jurisdiction. *Id.* Specifically, I may look to the filings in the Canadian action without converting the motion into one for summary judgment. *Id.* I must take the plaintiff's allegations as true and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Id.*

The issue in this case in not whether the Court has jurisdiction under the Declaratory Judgment Act. It does. Rather, the issue is whether the Court should abstain from exercising its jurisdiction. In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), the Supreme Court held that district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims. *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (citing *R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009)). This is known as the *Wilton/Brillhart* abstention doctrine. *Id.* "This

discretion arises from the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 itself, which provides that district courts '*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Id.* (quoting 28 U.S.C. § 2201(a)) (emphasis in original). The discretionary nature of the Act led the Supreme Court to hold in *Brillhart* and *Wilton* that district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in the sound exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case. *Id.* Although the Supreme Court did not set criteria for when a court should exercise its discretion to abstain, the "classic example of when abstention is proper" occurs when a complaint solely seeks declaratory relief and parallel state proceedings are ongoing. *Id.* Proceedings are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Id.*

The factors the court considers in deciding whether to abstain under *Wilton/Brillhart* are:

> [W]hether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). If the federal court action is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata," declaratory judgment serves no useful purpose. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C. V.*, 28 F.3d 572, 579 (7th Cir. 1994).

5

The *Wilton/Brillhart* abstention doctrine addresses parallel state court proceedings. Thus, Tax Airfreight argues that the *Wilton/Brillhart* abstention doctrine does not apply because this case involves a parallel foreign proceeding. (Pl.'s Br. at 4, Docket # 34.) Tax Airfreight argues that the defendants failed to cite any Seventh Circuit case applying the *Wilton/Brillhart* abstention doctrine in a pending foreign action and their motions should be denied on this basis alone. (*Id.* at 6.)

Although I agree that the defendants have not cited, and I have not found, a Seventh Circuit case applying the *Wilton/Brillhart* abstention doctrine in parallel foreign proceedings, it is telling that the Seventh Circuit has applied another abstention doctrine, the *Colorado River* abstention doctrine, in cases involving parallel foreign proceedings. The *Colorado River* abstention doctrine applies in situations where parallel state and federal proceedings are pending and the parties are seeking non-declaratory relief. *See R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 716 (7th Cir. 2009). The *Colorado River* abstention doctrine is narrower than the *Wilton/Brillhart* abstention doctrine. *Id.* However, in *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999), the court applied the *Colorado River* abstention doctrine when the parallel proceedings were in St. Lucia. The court stated as follows:

> Courts usually grapple with the issue of abstention in the context of parallel state court proceedings. The situation is somewhat different where, as here, "the alternate forum is not the tribunal of a state of the federal union to which, under our Constitution, we owe a special obligation of comity." *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987). Nevertheless, in the interests of international comity, we apply the same general principles with respect to parallel proceedings in a foreign court.

*Id.* Furthermore, courts in other jurisdictions have applied the *Wilton/Brillhart* abstention doctrine in parallel foreign proceedings. *See, e.g., ICBC Standard Sec., Inc. v. Luzuriaga*, 217 F.

Supp. 3d 733 (S.D.N.Y. 2016); *Mueller Sys., LLC v. Robert Teti & Itet Corp.*, 199 F. Supp. 3d 270, 282 (D. Mass. 2016); *Steamship Mut. Underwriting Ass'n Ltd. v. Osprey Underwriting Agency Ltd.*, No. C15-43 RSM, 2015 WL 3649283 (W.D. Wash. June 11, 2015); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (approving the district court's use of a five-factor analysis taken from precedents involving parallel state proceedings); *In re Air Crash Near Nantucket Island, Massachusetts, on Oct. 31, 1999*, 392 F. Supp. 2d 461 (E.D.N.Y. 2005); *Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147 (N.D. Cal. 2001). Thus, Tax Airfreight offers no compelling reason not to apply the *Wilton/Brillhart* abstention doctrine in a case such as this one, involving a parallel foreign proceeding.

Applying the *Wilton/Brillhart* factors to this case, dismissal of Tax Airfreight's declaratory judgment action is appropriate. First, the suit before this Court does not present any questions that are distinct from the issues raised in the Canadian proceeding. Tax Airfreight filed its complaint seeking a declaration that the defendants are not entitled to recover from Tax Airfreight the full replacement value of the missing equipment and that Tax Airfreight's maximum liability to the defendants for the alleged loss is limited to $373.00. (Docket # 1 at 9.) Tax Airfreight's third party complaint filed in the Canadian proceeding against GE, SDV (USA), and SDV Logistics Canada asserts that Tax Airfreight's liability is limited to $373.00 due to the Terms and Conditions governing the transport of goods by Tax Airfreight. (Docket # 1-11 at 3.) Tax Airfreight further filed a "Statement of Defence" in which it asserts that its liability is limited to $373.00 due to the Terms and Conditions. (*Id.* at 15.) Thus, both courts are being asked to decide precisely the same legal issue. Also, every party to the action before this Court is also a party in the proceeding before the Canadian court. (Docket # 1; Docket # 1-8.)

7

Next, allowing the declaratory judgment action before this Court to proceed further will not serve a useful purpose in clarifying the legal obligations and relationships between the parties. Rather, it will result in litigation that is duplicative of proceedings already taking place in the Canadian court. At the time of Tax Airfreight's filing of its declaratory judgment action in this court, it had asserted the same limitation of liability defense in the Canadian action nearly two years earlier. (Docket # 1-11.) Tax Airfreight has been actively participating in the Canadian litigation, producing documents, attending depositions, and producing a corporate representative for deposition. (Declaration of Gregory W. Jaycock ("Jaycock Decl.") ¶¶ 6-7, Docket # 24.) The Canadian court set a trial date of March 11, 2019, to which Tax Airfreight has not objected. (Jaycock Decl. ¶¶ 12-13.) Although Tax Airfreight argues that this Court is more qualified to interpret United States law than a foreign court; it has asserted that it will be relying on United States law in defense of the action and would be presenting an expert witness on United States law at trial in the Canadian action. (*Id.* ¶¶ 8-10.)

While Tax Airfreight argues that a declaratory judgment from this Court would clarify Tax Airfreight's liability going forward and would effectively settle the controversy as to Tax Airfreight, Tax Airfreight acknowledges that a determination from this Court will not settle the Canadian litigation as a whole. (Pl.'s Br. at 12.) Further, the Canadian court is not bound by this Court's decision. *Mueller Sys., LLC*, 199 F. Supp. 3d at 281 ("A decision from a court in the United States is not binding on Canadian courts."). The Canadian court has been adjudicating this action for nearly three years. It can be assumed that the Canadian court knows this case intimately and does not need another court's input in adjudicating a portion of the case. This Court's adjudication of Tax Airfreight's single defense amounts to

duplicative and piecemeal litigation. Tax Airfreight argues that this declaratory judgment is a more efficient means to adjudicating its liability because trial in the Canadian action is set for slightly less than one year from now. But that assumes that the course of this litigation, including any appeals, can be resolved prior to March 2019. That is optimistic at best.

Finally, comparable relief from the Canadian court is available to Tax Airfreight. Tax Airfreight argues that the United States has an interest in protecting the rights of its citizens; however, there is no indication that the Canadian court is not providing a proper forum for Tax Airfreight to adjudicate its claims. As noted above, Tax Airfreight had been actively litigating its claims in Canada for years prior to bringing this lawsuit. Tax Airfreight is correct that the Canadian action is unenforceable in the United States without the filing of an additional lawsuit seeking recognition of the foreign judgment. This does not tip the calculus in Tax Airfreight's favor, however, because the Canadian court is similarly not bound by this Court's determination.

The underlying facts, legal issues, and parties are virtually identical in both the Canadian action and the one currently before me. Tax Airfreight has been litigating the defense it now raises before this Court in Canada for the last two years. Trial in the Canadian case is scheduled for less than one year from now. Tax Airfreight has the opportunity to present an expert in United States law to the Canadian court. Again, weighing the factors articulated by the Seventh Circuit, I find it appropriate to exercise discretion under the *Wilton/Brillhart* abstention doctrine and abstain from proceeding further with this case.

## CONCLUSION

The *Wilton/Brillhart* abstention doctrine gives district courts significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims. Although the Seventh Circuit has not specifically applied this doctrine to parallel foreign proceedings, I find it appropriate to do so here. Analyzing the factors articulated by the Seventh Circuit, I find it appropriate to exercise discretion under the *Wilton/Brillhart* abstention doctrine and abstain from proceeding further with this case. Thus, the defendants' motions to dismiss are granted.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motions to dismiss (Docket # 22; Docket # 28) are **GRANTED**.

**IT IS FURTHER ORDERED** that SDV Logistics Canada's Motion for Joinder (Docket # 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is dismissed. The Clerk of Court is to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of May, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge